# UNITED STATES DISTRICT COURT
for the
District of Oregon

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No.  6:20-mj-246-MK |
| EDWARD AUGUSTUS BLAKE | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  **2016 to September 11, 2019**  in the county of  **Lane**  in the **__** District of  **Oregon**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), 846 and 843(a)(3) | Conspiracy to possess with the intent to distribute, possession with the intent to distribute, and acquiring through misrepresentation, fraud, forgery, deception, or subterfuge schedule II controlled substances fentanyl and morphine, schedule III controlled substance ketamine, and schedule IV controlled substance midazolam |

This criminal complaint is based on these facts:

The attached affidavit of Sean Cummings, which is incoporated herein

☑ Continued on the attached sheet.

/s/ Sean Cummings, Per Rule 4.1

*Complainant's signature*

Sean Cummings, Special Agent DEA

*Printed name and title*

Sworn to before me and signed in my presence.

Date:  September 30, 2020

*Judge's signature*

City and state:  Eugene, Oregon      Mustafa T. Kasubhai, U.S. Magistrate Judge

*Printed name and title*

**DISTRICT OF OREGON, ss: AFFIDAVIT OF SEAN CUMMINGS**

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT
AND ARREST WARRANT**

I, Sean Cummings, being first duly sworn on oath, depose and state that:

**INTRODUCTION**

1.      I am a Special Agent ("SA") with the Drug Enforcement Administration ("DEA") and have been since 1999. My current assignment is at the Eugene Resident Office. As such, I am empowered by Title 21, United States Code, Section 878 to make arrests and obtain and execute search warrants. My job assignment includes, but is not limited, to the investigation of violations of Title 21, United States Code, Sections 841(a)(1), 846, 843(b), and 856, which includes the detection, identification, and apprehension of those individuals involved in narcotics trafficking offenses. My training and experience includes completion of DEA basic training including the investigation, detection, and identification of controlled substances and conspiracy and complex investigations training. Additionally, I have participated in numerous narcotics investigations since my employment with the DEA as a case agent, undercover agent and surveillance agent. I have consulted and conversed with numerous other agents from various local, state and federal agencies on drug cases of all types including the distribution of heroin, cocaine and methamphetamine. As a result, of this and my own experience and training, I am familiar with the methods employed by traffickers of narcotics.

2.      I submit this affidavit in support of a criminal complaint and arrest warrant for Edward Augustus BLAKE, for conspiracy to possess with the intent to distribute, possession with the intent to distribute, and acquiring through misrepresentation, fraud, forgery, deception, or subterfuge schedule II controlled substances fentanyl and morphine, schedule III controlled

substance ketamine, and schedule IV controlled substance midazolam, all in violation of Title 21, United States Code, Sections 841(a)(1), 846 and 843(a)(3).  As set forth below, there is probable cause to believe, and I do believe, that BLAKE committed this offense.

3.  I am familiar with the facts and circumstances of this investigation based on my personal involvement in this investigation and from oral and written reports made to me by Springfield Police Department.  Unless placed in quotes, the statements of individuals are not direct quotes, but rather the essence of what the individual said.  I have not included all the details or of every aspect of this investigation to date.

### Applicable Law

4.  Title 21, United States Code, Section 841(a)(1) provides that "it shall be unlawful for any person knowingly or intentionally to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense a controlled substance" and Section 846 makes it unlawful to conspire to do so.

5.  Title 21, United States Code, Section 843(a)(3) provides "[i]t shall be unlawful for any person knowingly or intentionally … to acquire or obtain possession of a controlled substance by misrepresentation, fraud, forgery, deception, or subterfuge."

### Statement of Probable Cause

**A. Victim 1**

6.  On September 11, 2019, at 1:30 p.m., Springfield Police (SPD) Officers responded to McKenzie Willamette Hospital for a report of a female (VW1) who had been sexually raped the night prior (on September 10, 2019), while at the Regency Inn, located at 1152 Main Street, Springfield, Lane County, Oregon.  VW1 stated she was assaulted by a person she identified as

"Patrick" who stated he was a firefighter with the Eugene/Springfield Fire Department.

7.       VW1 began communicating with Patrick after responding to his Craigslist add looking for a female companion.  Patrick included a self-portrait of himself, posed in front of a mirror.  He also provide VW1 pictures of medical supplies to include medications that he said he took from the ambulance that he works on.  They agreed to meet.

8.       On September 10, 2019, VW1 met "Patrick" in his room at the Regency Inn in Springfield, Oregon.  VW1 saw the subject she knew as Patrick arrive in his vehicle when they first met.   VW1 described Patrick's vehicle as a red or pink truck with a green firefighter sticker in the back window.  There they consumed alcohol and had began sexual activity.  However, according to VW1, the suspect touched her vagina and began to choke her from behind with his arms to the point she could not breathe.  She became unconscious.

9.       VW1 regained consciousness to find an intravenous (IV) needle had been inserted into her arm while she was unconscious.  Patrick then forced her to take several medications, to include fentanyl, zofran, and propranolol according to the labels of drug vials.  VW1 said the drugs the suspect used were through an IV and caused her to be incapacitated to the point she could not consent to sexual contact.

10.      VW1 tried to fight the suspect off when she regained conscious.  However, in her drugged state, VW1 was unable to prevent Patrick from having intercourse with VW1.  VW1 said Patrick was wearing a condom, but at some point the condom broke and Patrick ejaculated inside of VW1.  Patrick also tried to sodomize her.

11.      Law enforcement confirmed BLAKE rented room #103 at the Residency Inn in Springfield, Oregon, on September 10, 2019.  He provided his Oregon driver's license for the

Page 3 – Affidavit of Sean Cummings                              USAO Version Rev. June 2017

reservation. Between January 12, 2019, and September 13, 2019, BLAKE rented a room at the Residency Inn 17 times. Most of the transactions were paid in cash.

12. On September 13, 2020, SPD detectives went to BLAKE's residence in Cheshire, Oregon, and encountered BLAKE. BLAKE confirmed he was employed as a firefighter for the Eugene/Springfield Fire Department. He admitted he posted a Craigslist add looking to meet someone and admitted that VW1 responded. He claimed VW1 was the only person to respond to his posting. BLAKE stated they drank some shots and they spent the night together. BLAKE admitted he had sexual intercourse with VW1, the condom broke, and he ejaculated inside of her.

13. Law enforcement asked BLAKE if he put an IV into VW1's arm. BLAKE admitted he did. BLAKE said he did it because VW1 said she had some "stuff." BLAKE said he did not know what it was. When asked if he put fentanyl or propranolol into the IV, he replied, "Not that I know of".

14. Law enforcement questioned BLAKE about his medical bag. At first, BLAKE claimed he did not have it and only had a small first aid kit. He also denied having a medical bag in his truck. When detectives questioned BLAKE further, he eventually admitted he did have a bag in his vehicle that contained medical items. BLAKE said he had "old medical" stuff in his residence, specifically in the study. BLAKE did not specify further what that meant.

15. Law enforcement could see in plain view a large bag in the back seat of a silver 2005 Dodge Dakota parked in the driveway of BLAKE's property. A search warrant was subsequently executed on the vehicle. Law enforcement seized from inside the bag six vials of Midazolam, six vials of Fentanyl Citrate, one vial of Ondansetron, two used needles with blood on them, drug packaging materials, and four plastic syringes.

**B. <u>Victim 2</u>**

16.     As part of the investigation, law enforcement identified a second victim (VW2) who reported she received controlled substances from BLAKE in exchange for sex.  In the spring of 2016, VW2 met BLAKE through a posting she placed on Craigslist.  VW2 said conversations started with BLAKE asking her if VW2 was a "cop".  VW2 said they continued to exchange emails until eventually VW2 told BLAKE that VW2 was looking for heroin.  VW2 said BLAKE told her he was an EMS worker and stated he had some morphine.  VW2 agreed to meet with BLAKE.

17.     In 2016, VW2 meet BLAKE at her apartment in Eugene.  VW2 said BLAKE initially searched her for a body wire upon his arrival and had her search him.  VW2 confirmed BLAKE had drugs.  BLAKE then pulled out the equipment including a needle, tourniquet, alcohol, and vials from a bag he brought.  VW2 told BLAKE she could shoot herself up with the drugs, but he insisted on putting the IV into her.  BLAKE then injected VW2 with what she believed was morphine and had sex with her.  BLAKE left VW2 with the vial containing the remaining morphine.

18.     BLAKE continued to provide morphine in exchange for sex from VW2 and left a couple vials of morphine when he left.  The last time they met, approximately May of 2016, BLAKE met VW2, who injected herself with morphine that BLAKE delivered to her.  She said BLAKE had sex with her and left a couple vials for her this time as well.  BLAKE started acting creepy and weird after that and VW2 stopped responding to his messages.

**C. <u>Victim 3</u>**

19.     As part of this investigation, law enforcement spoke with a third victim (VW3) who said that she met BLAKE on Craigslist in approximately 2017.  He was looking for someone to

party and play with. VW3 said that the first time she met BLAKE he provided her with 15 mg of Morphine, which he administered via IV. BLAKE then provided VW3 with a Ketamine vial that she kept to use or sell.

20. VW3 said that BLAKE provided drugs to her over fifteen times. VW3 said on several of those occasions VW3 was provided drugs by BLAKE, passed out, and woke up with KY Jelly all over her vagina and anus without any recollection of sex occurring.

21. On at least two to three other occasions, VW3 received vials of drugs to include ten 100 ml vials of Fentanyl. BLAKE told VW3 that he wanted to make money from her selling the Fentanyl vials. BLAKE told her that he wanted to get $50 to $100 dollars for each vial he provided to VW3. BLAKE specifically told VW3 not to let anyone keep the vials, because they could be traced back to him. During this time, VW3 had a substance abuse problem and each vial BLAKE gave her to sell she used and did not sell any of the vials.

22. VW3 said that during the time she knew BLAKE, she was hospitalized for drug use on several occasions. Each time VW3 was hospitalized BLAKE would show up at her hospital room and would provide her drugs into her IV to get her high. VW3 said each time she met BLAKE he never left any garbage behind including the IV's, tubing, and other packaging. VW3 said that she was hospitalized on several occasions from the drugs that BLAKE had provided her.

### D. Theft of Controlled Substances

23. Law enforcement conducted an investigation into the source of the drugs BLAKE had obtained. As a paramedic with the Eugene/Springfield Fire Department, BLAKE could access controlled substances from Peace Health pharmacy in Springfield. An audit was conducted comparing the drugs obtained by BLAKE from the Pyxis machine at Peace Health. This was

according to biometric authentication that BLAKE entered into inventory on the ambulance for Eugene/Springfield Fire Department.

24. From a period of January 2016, through September 2019, BLAKE took the following controlled substances from the hospital but did not enter them into the ambulance inventory:

>181 vials of Fentanyl 100mcg/2ml (schedule II)
>
>24 vials of Morphine 10mg/1ml (schedule II)
>
>10 vials of Ketamine 500mg/5ml (schedule III)
>
>128 vials of Midazolam 5mg/5ml (schedule IV)

25. Nor was there legitimate corresponding disposition for any of these controlled substances documented by BLAKE. These controlled substances were never accounted for by Eugene/Springfield Fire Department.

26. These same types of controlled substances, in the same dosages and forms, were found on BLAKE's person at his home during a search warrant executed by Springfield Police Department.

27. The controlled substances found cannot be purchased by a non-DEA registered entity, received via a prescription from a provider, or by any other legitimate means.

## Conclusion

28. Based on the foregoing, I have probable cause to believe, and I do believe, that Edward Augustus BLAKE conspired to possess, possessed with the intent to distribute, and acquired through misrepresentation, fraud, forgery, deception, or subterfuge schedule II controlled substances fentanyl and morphine, schedule III controlled substance ketamine, and schedule IV

controlled substance midazolam, all in violation of Title 21, United States Code, Sections 841(a)(1), 846 and 843(a)(3with intent to distribute methamphetamine, in violation of Title 21, United States Code, Section 841(a)(1). I therefore request that the Court issue a criminal complaint and arrest warrant for Edward Augustus BLAKE.

29. Prior to being submitted to the Court, this affidavit, the accompanying complaint, requested arrest warrants were all reviewed by Assistant United States Attorney (AUSA) Joseph Huynh, and AUSA Huynh advised me that in his opinion the affidavit and application are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

/s/ Sean Cummings, Per Rule 4.1
Sean Cummings
Special Agent
Drug Enforcement Administration

Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at 11:25 am a.m/p.m. on September 30, 2020.

MUSTAFA T. KASUBHAI
United States Magistrate Judge